Brett W. Johnson, Bar No. 205988
bwjohnson@swlaw.com
Colin R. Higgins, Bar No. 268364
chiggins@swlaw.com
Cameron J. Schlagel, Bar No. 320732
cschlagel@swlaw.com
SNELL & WILMER L.L.P.
600 Anton Boulevard, Suite 1400
Costa Mesa, California 92626-7689
Telephone:     714.427.7000
Facsimile:     714.427.7799

Attorneys for Plaintiff
Veritas Global Protection Services, Inc.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERITAS GLOBAL PROTECTION SERVICES, INC, <br><br> Plaintiff, <br><br> v. <br><br> GGL PROJECTS, INC., also d/b/a SITEJABBER, and DOES 1 – 100, inclusive, <br><br> Defendant. | Case No. <br><br> **Veritas Global Protection Services, Inc.'s Complaint for:** <br><br> **(1)  False Advertising (Lanham Act, 15 U.S.C. § 1125)** <br> **(2)  False Advertising (Cal. Bus. & Prof. Code §§ 17500 et seq.)** <br> **(3)  Unlawful, Unfair & Fraudulent Business Practices (Cal. Bus. & Prof. Code §§ 17200 et seq.); and** <br> **(4)  Injunctive Relief** <br><br><br> **DEMAND FOR JURY TRIAL** |

SNELL & WILMER

VERITAS' COMPLAINT

Plaintiff Veritas Global Protection Services, INC ("Veritas") hereby alleges as follows:

**INTRODUCTION**

1.      Veritas is a leading administrator of vehicle service contracts and other Finance and Insurance ("F&I") products, serving more than 289,000 customers across the United States and partnering with over 5,000 dealerships. Veritas pays millions of dollars in claims each month and maintains extraordinarily high customer satisfaction.

2.      Defendant GGL Projects, Inc., doing business as Sitejabber ("Sitejabber"), markets itself as an "unbiased" review platform and touts its status as an official Google Review Partner. Sitejabber publicly claims it hosts more than 10 million reviews covering approximately 140,000 businesses and that its "AI-based moderation" ensures the integrity of every review.

3.      In approximately late-2023 or early-2024, Sitejabber affixed to Veritas's profile a prominent, Sitejabber-authored banner stating that Veritas's profile has been "flagged for suspicious review activity" that Sitejabber is "currently investigat[ing]" or "remov[ing]."

4.      Based on Sitejabber's artificial and misleading curation of customer reviews, the Sitejabber-authored summary on Veritas's profile falsely proclaims that Veritas's reputation "is significantly marred by widespread customer dissatisfaction" and that the "few positive comments" are "overshadowed by the prevailing sentiment of distrust and disappointment." This summary, according to Sitejabber, "is generated by AI, based on the text from customer reviews."

5.      The above AI-generated statement is false, deceptive, and defamatory. On information and belief, positive reviews have been submitted on a regular basis, but due to the ongoing "investigation" that SiteJabber claims to be conducting, Sitejabber has blocked *all* positive-star reviews since November 7, 2023, while allowing only negative-star reviews to be posted.

6.      The banner and AI-generated summary are authored and published by Sitejabber, not by third-party users. These statements are prominently displayed on Veritas's Sitejabber profile and appear in search engine results, where they are visible to consumers, dealerships, and industry partners. These statements have caused substantial reputational harm to Veritas, including the loss of dealerships who were considering selling Veritas products and the loss of

4910-4249-8663

numerous prospective customers who were discouraged from purchasing a Veritas F&I product from dealerships that sell those products.

7. Sitejabber offers a suite of reputation management tools and enhanced moderation features exclusively to businesses that pay for premium accounts. Businesses with free accounts do not have access to these features. On information and belief, had Veritas paid for a premium account, Sitejabber would have resolved its purported investigation, removed the false and defamatory banner, allowed legitimate positive reviews to be published, and altered the AI-generated summary to reflect a more accurate and favorable depiction of Veritas's reputation. As a result, Veritas has been subjected to disparate treatment and reputational harm.

8. Sitejabber's conduct violates federal and California false-advertising and unfair-competition statutes and constitutes actionable defamation/trade libel. Sitejabber's practices have also been the subject of regulatory enforcement, including a recent Federal Trade Commission Complaint and Final Order addressing deceptive review and rating practices.[1] Despite this regulatory action, Sitejabber continues to publish false and misleading statements. Sitejabber's misconduct violates the FTC's Final Order, which bars Sitejabber from misrepresenting ratings or reviews it "collects, moderates, or displays."

9. Veritas brings this action to obtain damages, injunctive relief, and all other remedies available at law or in equity.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Veritas's claims arise in part under the Lanham Act, 15 U.S.C. § 1125(a).

11. This Court also has subject-matter jurisdiction under 28 U.S.C. § 1332(a) because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12. In accordance with 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction over Veritas's state-law claims, which form part of the same case or controversy.

---

[1] Final Order, *In re GGL Projects, Inc.*, FTC Docket No. C-4808 (Dec. 30, 2024) (the "FTC Order").

- 3 -                                    VERITAS' COMPLAINT

13.     Sitejabber maintains its headquarters in this District, purposefully directs its misconduct here, and publishes its false and defamatory statements to California residents. It therefore "resides" in this District within the meaning of 28 U.S.C. § 1391(c)(2).

14.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1)–(2) because Sitejabber resides in this District and a substantial part of the events or omissions giving rise to Veritas's claims occurred here.

## PARTIES

15.     Plaintiff Veritas Global Protection Services, INC, is an Arizona corporation with its principal place of business at 3550 N. Central Ave., Suite 800, Phoenix, Arizona 85018. Veritas sells and administers vehicle service contracts, GAP coverage, ancillary products, product warranties, and other F&I products.

16.     Defendant GGL Projects, Inc., also doing business as Sitejabber, is a California corporation with its principal place of business at 700 El Camino Real, Suite 120-1312, Menlo Park, California 94025. It operates the review website www.sitejabber.com and the Jabio reputation-management platform.

17.     Veritas does not know the true names of defendants Does 1 through 100, nor the true capacities, whether as individuals, corporations, partnerships, joint ventures, and/or associations of these defendants. When Veritas ascertains the true names and/or capacities of any of these defendants, Veritas will amend this Complaint to insert these defendants' true names and/or capacities. Veritas is informed and believes that at all relevant times each of the defendants named in this Complaint as one of Does 1 through 100 was responsible in some manner for the events alleged in this Complaint.

18.     Veritas is informed and believes that at all times mentioned in this Complaint, the above-named Defendant and Does 1 through 100 were the agents, servants and employees of their Co-Defendants, and in doing the things set forth in this Complaint were acting within the scope of their authority as such agents, servants and employees, with permission and consent from their Co-Defendants. Moreover, Veritas is informed and believes, and on that basis alleges, that each

- 4 -                                        VERITAS' COMPLAINT

4910-4249-8663

Defendant ratified the acts of his/her/its Co-Defendants, as more particularly alleged in this Complaint.

## FACTUAL ALLEGATIONS

19.     Veritas incorporates by reference each preceding paragraph of this Complaint as if set forth in full.

### *Veritas's Operations and Reputation*

20.     Veritas administers a broad portfolio of F&I products, including vehicle service contracts, GAP coverage, ancillary products, product warranties, and various other F&I products. These products are distributed through a network of more than 5,000 franchised and independent dealerships across the United States and internationally.

21.     Veritas's contracts are subject to regulatory approval in over 30 states and are accepted by major automotive lenders. Veritas's business model emphasizes compliance, transparency, and customer service.

22.     Veritas sells its F&I products only through dealerships. This means that Veritas solicits dealerships across the United States and globally—often through independent agents— that in turn offer Veritas-administered service contracts to their customers.

23.     Veritas generally does not directly interact with consumers when a service contract or other F&I product is sold. Rather, Veritas administers the F&I products that dealers market and sell to consumers.

24.     Since its formation in 2019, over 289,000 customers in the United States have purchased a Veritas-administered or managed F&I product. As of the date of this Complaint, Veritas has paid out over $155,000,000 in claims.

25.     Due to the extremely high volume of customer sales & claims, and because the average customer purchases a 48-month contract, Veritas receives and processes a high volume of claims and customer-service requests.

26.     Veritas has a proven track record of customer satisfaction. Over the last twelve months, Veritas has regularly sold over 10,000 F&I products per month. Veritas has processed an average of 3,768 claims per month and paid on average more than $4.1 million in claims each

4910-4249-8663

month. The company maintains a complaint ratio of less than 0.05 percent, which is an industry-leading metric and demonstrates Veritas's commitment to honoring its contractual obligations and providing value to its customers.

### *Sitejabber's Representations and Marketing Claims*

27. Sitejabber's public-facing materials—including its "About Us," "Review Approval Process," and "Trust & Transparency" webpages—make detailed representations about the integrity and reliability of its review platform.

28. On its "About Us" webpage,[2] Sitejabber represents that it is "a reviews platform by everyday people, for everyday people," and that it is "dedicated to helping buyers make informed choices through real, unbiased reviews fostering a reliable online community." Sitejabber claims it "a trusted resource and an official Google Review Partner for millions worldwide who rely on authentic reviews to discover businesses, avoid scams, and buy with confidence." It states that it has helped over 200 million buyers, published over 10 million buyer reviews, and reviewed more than 140,000 businesses. Sitejabber emphasizes that it takes "special care in maintaining the integrity of every review on [its] platform."

29. On information and belief, as "an official Google Review Partner,"[3] Sitejabber transmits its star ratings and review summaries for display in Google search results, thus amplifying the impact of any false or misleading statements published on its platform.

30. Sitejabber's "Review Approval Process" webpage[4] provides additional details about its purported review validation process. Sitejabber represents that it utilizes a "multi-layered approach to validate reviews," which includes:

> (i) *Automated Filtering*:  Sitejabber claims to use sophisticated software that continuously scans and analyzes all incoming reviews. This software is designed to detect

---

[2] *About Us*, SITEJABBER.COM (last accessed Nov. 5, 2025), https://www.sitejabber.com/about-us.

[3] *See* Google Ads Help, *About Store Ratings*, GOOGLE.COM (last accessed Nov. 5, 2025) https://support.google.com/google-ads/answer/2375474?hl=en#:~:text=If%20you%20don't%20have,like%20to%20work%20with%20directly (Listing "Sitejabber" among Google's "Supported review partners," which Google describes as "independent review websites that aggregate business reviews").

[4] *Sitejabber Review Approval Process*, SITEJABBER.COM (last accessed Nov. 5, 2025), https://www.sitejabber.com/review-approval-process.

VERITAS' COMPLAINT

4910-4249-8663

patterns and anomalies that may indicate fake or fraudulent reviews, such as duplicate content, unusual language patterns, and suspicious account activity. Sitejabber states that any reviews flagged by the software are automatically removed from the platform. The company asserts that its software is constantly updated and refined to stay ahead of evolving tactics used by those attempting to manipulate reviews.

(ii)    *Manual Review*:  In addition to automated filtering, Sitejabber claims to have a dedicated review team that manually spot-checks reviews. While not every review is manually reviewed due to volume, the team purportedly prioritizes reviews flagged by the software or reported by the community as suspicious. The review team then examines the content and context of reviews to assess their authenticity.

(iii)    *Community Involvement*:  Sitejabber encourages users to report any reviews they find suspicious or believe to be fake. These reports are sent directly to the Review Team, who then investigate the flagged reviews further. Sitejabber represents that community involvement is essential in helping to identify and remove fake reviews that may have slipped through the automated filters.

31.    On its "Trust & Transparency" webpage,[5] Sitejabber lists five areas that it claims demonstrate it is reliable and transparent:

(i)    Sitejabber claims that it is "dedicated to providing a space for real, unbiased consumer reviews so consumers can make more informed decisions." Sitejabber asserts that trust is crucial in the digital world and that it is "committed to maintaining transparent review practices that benefit both consumers and businesses." Sitejabber claims to uphold the integrity of its platform to create a space where users can confidently rely on the information they find.

(ii)    Sitejabber describes its review submission process as simple, stating that reviews can be written directly on its website by searching for a business and providing feedback. Sitejabber requires a valid email address to submit a review, which it claims

---

[5]    *Trust & Transparency*, SITEJABBER.COM (last accessed Nov. 5, 2025), https://www.sitejabber.com/trust-and-transparency.

- 7 -                                VERITAS' COMPLAINT

helps ensure authenticity. It also allows businesses to send review requests to gather verified feedback from their customers, and customers can fill out a survey provided in such requests.

(iii)    Sitejabber details a multi-layered approach to detecting fraudulent reviews, combining advanced technology with human expertise. Sitejabber claims to employ advanced software that analyzes reviews for patterns indicative of fraudulent activity, such as similar writing styles across multiple reviews, suspicious account creation patterns, and location data. This software is said to identify and remove fake reviews "*before they are ever published*." Sitejabber also states that it has a dedicated team of moderators who examine flagged content and have the expertise to discern genuine reviews from suspicious activity. Sitejabber encourages consumers and visitors to flag any review that violates content guidelines or seems suspicious, and its moderation team will investigate and take appropriate action.

(iv)    Sitejabber further represents that it provides a valuable platform for businesses to build trust, address concerns, and improve customer satisfaction. Sitejabber claims that businesses can thank satisfied customers for positive feedback, address concerns in negative reviews, and report reviews that violate Sitejabber's content policy. Sitejabber asserts that reporting can be done through a dedicated report function in business dashboards.

(v)    Finally, Sitejabber claims that it is committed to continuously improving its review validation process and that it is dedicated to upholding the highest standards of integrity on its platform. By combining automated filtering, manual review, and community involvement, Sitejabber claims to provide a platform where users can trust the reviews they read and make informed decisions based on authentic experiences.

32.    In sum, Sitejabber represents that by combining authentic reviews, advanced fraud detection, and business engagement, it empowers consumers to make informed decisions and helps businesses build relationships with their customers.

- 8 -                                    VERITAS' COMPLAINT

4910-4249-8663

33.     Sitejabber invites business to join its platform, touting a robust suite of features. Although Sitejabber offers a "free" business account with minimal features, it actively advertises and promotes its "Sitejabber for Business" platform directly to companies seeking to manage online reviews and reputation.[6] Sitejabber represents to prospective business clients that its platform provides a "reviews and reputation HQ," offering centralized tools to collect, monitor, publish, and analyze customer reviews, with the stated goal of increasing trust, visibility, and sales.

34.     Sitejabber advertises that paying businesses can generate substantially more reviews than they would otherwise collect on their own. It promotes "Review Sourcing" tools that purportedly generate "25× more reviews" through multiple channels, including checkout surveys, batch emails, feedback links, video testimonial requests, automated emails, SMS campaigns, and on-site widgets.[7]

35.     Sitejabber claims that its "Review Sourcing" system produces "drastically reduced false reviews" by targeting real customers, and promises that these reviews can be collected seamlessly and on a recurring basis to ensure a continuous flow of positive customer sentiment.[8]

36.     Sitejabber represents that paying businesses can monitor reviews from multiple platforms in a single unified dashboard. The "Review Monitoring & Publishing" tool aggregates review content, provides filtering and historical data, and allows businesses to respond to reviews directly from within the platform.[9]

37.     Sitejabber also markets that reviews collected through its system can be published widely to benefit paying businesses, including on Google Seller Ratings, e-commerce platforms, advertisements, social media, email marketing, websites, and customizable Sitejabber profile pages. Sitejabber claims this functionality can increase ad click-through rates by up to 26%.[10]

---

[6] *Grow Your Business With the Power of Real Reviews*, SITEJABBER.COM (last accessed Nov. 5, 2025), https://www.sitejabber.com/business.

[7] *How it Works – Review Sourcing*, SITEJABBER.COM (last accessed Nov. 5, 2025), https://www.sitejabber.com/business/review-sourcing.

[8] *Id.*

[9] *How it Works – Monitoring & Publishing*, SITEJABBER.COM (last accessed Nov. 5, 2025), https://www.sitejabber.com/business/review-monitoring-publishing.

[10] *Id.*

4910-4249-8663

38. Sitejabber also sells a "Product Reviews" service, enabling businesses to solicit reviews tied to individual products through confirmation emails, bulk outreach, SMS, feedback links, and point-of-sale widgets. It claims that showcasing such reviews can increase conversion rates by up to 270%, or as much as 380% for higher-priced items.[11]

39. Sitejabber markets "Customer Experience" tools that allow businesses to solicit and analyze survey data, including Net Promoter Score, Customer Satisfaction, Customer Effort Score, and customer journey mapping. It further claims to offer "Review Tagging" and customizable surveys to provide deeper insights into consumer behavior.[12] Sitejabber represents that it integrates with customer service systems such as Zendesk, allowing businesses to convert reviews into support tickets, reply directly, and manage customer inquiries through a single inbox.

40. Sitejabber offers tiered pricing plans, each bundling review collection, publishing, analytics, and integrations in progressively broader form. These tiers are marketed as essential investments for businesses to maintain competitiveness and protect online reputation.[13]

41. On information and belief, the vast majority of these marketed features and benefits are offered exclusively to paying businesses and Sitejabber's policies and practices prevent non-paying businesses from accessing similar tools.

42. On information and belief, the review-collection, publishing, and moderation tools provided to paying businesses are designed to give them the ability to avoid or undo the suppression of positive reviews, while non-paying businesses face the removal or holding back of favorable reviews under the pretext of investigating "suspicious activity."

43. On information and belief, the effect of these practices is that Sitejabber artificially deflates the review ratings of non-paying businesses while simultaneously offering paying

---

[11] *How it Works – Product Reviews*, SITEJABBER.COM (last accessed Nov. 5, 2025), https://www.sitejabber.com/business/product-reviews.

[12] *How it Works – Customer Experience*, SITEJABBER.COM (last accessed Nov. 5, 2025), https://www.sitejabber.com/business/customer-experience.

[13] *Plans*, SITEJABBER.COM (last accessed Nov. 5, 2025), https://www.sitejabber.com/business/pricing.

4910-4249-8663

businesses the ability to present a curated, elevated reputation, thereby creating a two-tiered system that misleads consumers and distorts competition.

### *The FTC's 2024 Enforcement Action Against Sitejabber*

44.     In November 2024, the FTC brought a Complaint against Sitejabber,[14] alleging that it engaged in deceptive acts and practices in violation of Section 5(a) of the Federal Trade Commission Act. Specifically, the FTC alleged that Sitejabber "deceived consumers by misrepresenting that ratings and reviews it published came from customers who experienced the reviewed product or service, artificially inflating average ratings and review counts."[15]

45.     According to the FTC, Sitejabber "collected ratings and reviews for its online business clients from consumers at the time of purchase, before they received or had the chance to experience the products or services they bought." It then used these ratings and reviews "to deceptively inflate the average ratings and review counts of its clients on the company's review platform, claiming that the ratings 'indicat[e] that most customers are generally satisfied with their purchases.'" These inflated ratings and review counts were also displayed in Google and other search results, thereby misleading consumers into believing that the ratings reflected post-fulfillment experiences.[16]

46.     Furthermore, the FTC alleged that Sitejabber provided its business clients with "review tools that allowed them to publish [pre-fulfillment product ratings and reviews] on their own websites as product reviews and ratings," which provided Sitejabber clients "with the means to misrepresent that the reviews and ratings were from customers who had received their purchases."[17]

---

[14] Complaint, *In re GGL Projects, Inc.*, FTC Docket No. C-4808 (the "FTC Complaint").

[15] *FTC Order Against AI-Enabled Review Platform Sitejabber Will Ensure Consumers Get Truthful and Accurate Reviews*, FTC.GOV (Nov. 6, 2024), https://www.ftc.gov/news-events/news/press-releases/2024/11/ftc-order-against-ai-enabled-review-platform-sitejabber-will-ensure-consumers-get-truthful-accurate (describing and linking to complaint).

[16] *Id.*

[17] *Id.*

VERITAS' COMPLAINT

4910-4249-8663

47.     The FTC also alleged that Sitejabber's representations that its ratings and reviews reflected genuine customer satisfaction were false and misleading, and that these practices were likely to affect consumers' purchasing decisions.

48.     After an investigation into Sitejabber's review and rating practices, on December 30, 2024, the FTC entered the FTC Order.[18] The FTC Order prohibits Sitejabber from making any misrepresentation, expressly or by implication, about the nature or source of any ratings, average ratings, or reviews it collects, moderates, or displays. Specifically, the FTC Order bars Sitejabber from representing that the average customer rating or total number of ratings or reviews of a product, service, or business reflects only the ratings or reviews of customers who have received the product or service purchased and had the opportunity to experience it, unless that is in fact true.

49.     The FTC Order further requires Sitejabber to maintain detailed records of its review and rating practices, submit compliance reports to the Commission, and implement ongoing monitoring and compliance measures for a period of twenty years.

### *Sitejabber's Conduct Directed at Veritas*

50.     Without Veritas's consent, Sitejabber created a Veritas profile in or about January 2022. Sitejabber did not notify Veritas of the creation of this profile, nor did it provide Veritas with any opportunity to control or manage the content displayed on the profile page. Veritas was not given the option to opt out of being listed on Sitejabber's platform.

51.     With Veritas' volume of customers, if only 1% of its customers complain, it should receive over 1,200 complaints annually. However, combining all alleged and verified complaints that get filed against Veritas annually, the number is less than 500—less than 0.05% of all customers.

52.     Based on its sales volume and customer base, Veritas reasonably expected that its Sitejabber profile would reflect a representative sample of customer experiences, including both positive and negative reviews.

---

[18] *See* FTC Order, *supra*, Note 1.

VERITAS' COMPLAINT

4910-4249-8663

53.    There is a prominently-displayed banner that Sitejabber affixed to the top of Veritas's profile stating: "Veritas Global Protection has been flagged for suspicious review activity. Many of the reviews look fake and are currently being investigated or have been removed" (the "Banner").[19]



54.    This Banner was not based on any regulatory finding or third-party investigation, but was instead a unilateral determination by Sitejabber. As of the date of the filing of this Complaint, the Banner is still displayed to all visitors to the Veritas profile, including potential customers and business partners.

55.    Beneath the Banner, Sitejabber published an AI-generated summary of the purported customer reviews posted to Veritas's profile (the "AI Summary"), stating: "The overall reputation of the company is significantly marred by widespread customer dissatisfaction. Many reviews highlight serious issues with claims processing, including frequent denials, extended delays, leading to frustration among customers who feel misled about their warranty coverage. Customers consistently report poor customer service, with representatives often unhelpful or dismissive. While a few positive comments acknowledge the flexibility and affordability of their warranty plans, these are overshadowed by the prevailing sentiment of distrust and

---

[19] *See Veritas Global Protection Services, Inc.*, SITEJABBER.COM (last accessed Nov. 5, 2025), https://www.sitejabber.com/reviews/veritasprotection.com.

- 13 -                                    VERITAS' COMPLAINT

4910-4249-8663

disappointment, suggesting a critical need for the company to improve its claims handling and customer support practices."[20]

**Veritas Global Protection Reviews Summary**

The overall reputation of the company is significantly marred by widespread customer dissatisfaction. Many reviews highlight severe issues with claims processing, including frequent denials and extended delays, leading to frustration among customers who feel misled about their warranty coverage. Customers consistently report poor customer service, with representatives often unhelpful or dismissive. While a few positive comments acknowledge the flexibility and affordability of their warranty plans, these are overshadowed by the prevailing sentiment of distrust and disappointment, suggesting a critical need for the company to improve its claims handling and customer support practices.

✦ This summary is generated by AI, based on text from customer reviews

56.     Both the Banner and the AI Summary are authored solely by Sitejabber. They are not quotations from, and do not link to, any customer review.

57.     On information and belief, despite numerous submissions of positive reviews by verified Veritas customers, Sitejabber failed to publish any positive reviews for Veritas after November 6, 2023. This abrupt cessation of positive review publication occurred without explanation and was not the result of any change in Veritas's business practices or customer satisfaction levels.

58.     For example, between August 13 and 14, 2025, three verified Veritas customers submitted detailed five-star reviews attesting to thousands of dollars in claims paid by Veritas. These reviews were not published by Sitejabber, despite confirmation of their authenticity and the customers' status as actual Veritas clients.

59.     In a controlled test conducted on March 6, 2025, using the test account named "Sydney A," Veritas submitted two separate reviews with identical, positive review text, but with different star ratings: the first review had a five-star rating, while the second review had a one-star

---

[20] *Id.*

4910-4249-8663

rating. The review with a five-star rating was blocked and never published. The review with the one-star rating, however, was published immediately:[21]



60.     Sitejabber's process thus has the effect of suppressing or blocking legitimate positive reviews while allowing negative reviews.

61.     The AI Summary is deceptive and misleading on its face, even based on the artificially and deceptively curated customer reviews that are currently shown on Veritas's profile. Sitejabber's rating distribution for Veritas's profile shows that out of the 132-posted reviews, 47% are five-star, 2% are four-star, and 51% one-star (including, at minimum, the test review by "Sydney A," which is substantively positive, but is only one-star). A 51% negative-star rating—already shown to be inaccurate—does not reflect "widespread customer dissatisfaction" within any reasonable meaning of that phrase. Nor does a 49% positive-star rating consist of only "a few positive comments" "overshadowed by" a "prevailing sentiment of distrust and disappointment." Sitejabber's star-distribution graphic, which reflects a purported average rating of 1.9 stars, is deceptive and misleading for the same reasons.

---

[21] *Id.*

- 15 -                          VERITAS' COMPLAINT

4910-4249-8663

62. On information and belief, Sitejabber's conduct toward Veritas is part of a broader pattern of disparate treatment of non-paying businesses. Sitejabber offers enhanced moderation, review management, and reputation repair tools exclusively to businesses that pay for premium accounts. But, on information and belief, non-paying businesses, such as Veritas, are subject to more restrictive moderation, increased scrutiny, and the imposition of false and misleading banners and AI-summaries.

63. Sitejabber's marketing materials and public representations emphasize the benefits of its paid services, including the ability to manage and respond to reviews, monitor reputation, and access advanced analytics. Veritas, as a non-paying business, does not have access to these tools and is subjected to a one-sided and negative portrayal on the Sitejabber platform.

64. On information and belief, businesses that pay for any one of Sitejabber's tiered subscription plans rarely receive the Banner or a negative AI Summary, and their positive-review publication rates materially exceed those of non-paying businesses such as Veritas.

65. On information and belief, if Veritas had paid for a subscription account, Sitejabber would have resolved its purported investigation, removed the Banner, allowed positive reviews to be published, and altered the AI-generated summary to reflect a more favorable depiction of Veritas's reputation.

66. The publication of the Banner and AI Summary, combined with the suppression of positive reviews, has had a direct and substantial impact on Veritas's business relationships and reputation.

67. Despite objective evidence of Veritas's high customer satisfaction and legitimate positive reviews submitted by verified customers, Sitejabber continues to publish the Banner and AI Summary, suppress positive reviews, and maintain the false narrative of widespread dissatisfaction. Sitejabber's actions were taken with knowledge of their falsity or with reckless disregard for the truth, causing harm Veritas's reputation and business relationships.

68. Dealerships and/or dealership groups, including multi-store groups in multiple states, declined or terminated relationships with Veritas after viewing the Sitejabber profile in Google search results.

VERITAS' COMPLAINT

4910-4249-8663

69.     Furthermore, on information and belief, countless other customers who were considering buying a Veritas-administered F&I product from their dealership chose not to do so after searching for "Veritas Global Protection" on Google and seeing Veritas's Sitejabber profile.

70.     Veritas has incurred significant investigative costs and retained counsel to mitigate ongoing reputational harm. The negative portrayal of Veritas on Sitejabber's platform has caused a decline in sales, lost business opportunities, and damage to Veritas's standing in the industry.

## FIRST CLAIM FOR RELIEF

### (False Advertising – Lanham Act, 15 U.S.C. § 1125)

71.     Veritas incorporates by reference each preceding paragraph of this Complaint as if set forth in full.

72.     Sitejabber's Banner, AI Summary, and marketing statements constitute "commercial advertising or promotion" within the meaning of 15 U.S.C. § 1125(a)(1)(B). The Banner, AI Summary, and marketing statements are displayed in a standardized format, are drafted exclusively by Sitejabber, and are disseminated to millions of online consumers through Google search results, Google Seller Ratings, and other syndicated feeds, thereby reaching "prospective purchasers" of Veritas's F&I products nationwide.

73.     The statements that comprise the Banner, AI Summary, and marketing are Sitejabber's own statements, not statements of third-party users.

74.     The statements are literally false or, at minimum, misleading and likely to deceive consumers searching for warranty providers, including for the following reasons:

(i)     No "suspicious review activity" was specifically identified by Sitejabber, and even if it was, Sitejabber has not conducted any neutral investigation as it claims.

(ii)     Since November 7, 2023, every consumer positive-star review submitted to Veritas's profile has been held in moderation or blocked, while at the same time Sitejabber allows negative-star reviews (or ostensibly negative-star reviews) to be posted to Veritas's profile, contradicting Sitejabber's representation that it is conducting a neutral "investigation" and its marketing statements concerning the reliability of its platform and its review approval process.

4910-4249-8663

(iii)     Sitejabber's star-distribution graphic, which currently displays 47% five-star ratings and 2% four-star ratings, is mathematically inconsistent with and contradict Sitejabber's statements through its AI Summary that Veritas is "significantly marred by widespread customer dissatisfaction" and that the "few" positive reviews that exist are "overshadowed" by "prevailing" sentiments of "distrust and disappointment."

75.     Even if any portion of Sitejabber's statements was not literally false, the statements are nevertheless misleading because Sitejabber intentionally curates the review corpus through its "pay-to-play" moderation scheme, as alleged. Consumers thus encounter a materially distorted impression of Veritas's reputation and the quality of its contract administration services.

76.     Sitejabber's deception is material. Consumers rely on Sitejabber ratings when deciding whether to purchase F&I products administered by Veritas. Further, since January 2024, multiple dealership groups have terminated Veritas in reliance on the Banner and AI Summary after encountering them on Sitejabber, via Google, or elsewhere in ordinary search results.

77.     Sitejabber's interstate publication of the Banner and AI Summary proximately caused Veritas to lose sales and suffer reputational injury.

78.     As a direct and proximate cause of Sitejabber's conduct, Veritas has suffered damages in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF

**(False Advertising – Cal. Bus. & Prof. Code §§ 17500 et seq.)**

79.     Veritas incorporates by reference each preceding paragraph of this Complaint as if set forth in full.

80.     Sitejabber disseminated untrue and misleading statements in California concerning Veritas—including, but not limited to, the Banner and AI Summary—in violation of Cal. Bus. & Prof. Code § 17500. Sitejabber also disseminated untrue and misleading statements concerning the reliability, accuracy, qualities, and features of its consumer and business product offerings. On information and belief, Sitejabber disseminates its Banner, AI Summary, and marketing statement nationwide, including to California consumers.

4910-4249-8663

81.     The statements that comprise the Banner, AI Summary, and marketing are Sitejabber's own statements, not statements of third-party users.

82.     Reasonable consumers are likely to be deceived by Sitejabber's statements that Veritas's reviews are "fake" and that "widespread customer dissatisfaction" exists.

83.     Reasonable consumers are also likely to be deceived by Sitejabber's marketing and advertising statements concerning the reliability, accuracy, qualities, and features of its consumer and business product offerings.

84.     Veritas has suffered economic injury and lost money and property within the meaning of Cal. Bus. & Prof. Code § 17535 in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF

### (Unlawful, Unfair & Fraudulent Business Practices –

### Cal. Bus. & Prof. Code §§ 17200 et seq.))

85.     Veritas incorporates by reference each preceding paragraph of this Complaint as if set forth in full.

86.     Sitejabber's conduct alleged herein is unlawful because it violates: (i) the Lanham Act; (ii) the False Advertising Law, Bus. & Prof. Code § 17500; (iii) the FTC Act, 15 U.S.C. § 45(a), which the FTC's Order expressly found Sitejabber had violated; and (iv) the FTC's Final Order itself.

87.     Sitejabber's conduct alleged herein also constitutes an unfair business practice. On information and belief, Sitejabber's business practices result in disparate treatment of non-paying businesses, such as Veritas, by suppressing positive reviews, publishing negative reviews, and maintaining false and defamatory banners and summaries. These practices distort the marketplace, harm competition, and mislead consumers searching for reputable service providers. Sitejabber's practices mislead consumers who reasonably rely on the objectivity of the curated online reviews on Sitejabber's platform. This also shifts marketplace trust toward Sitejabber's paid subscribers, thereby distorting competitive conditions in the F&I industry. These harms easily outweigh any speculative efficiency justification.

4910-4249-8663

88.     Sitejabber's representations regarding "real, unbiased reviews" and the integrity of its moderation system, independently or combined with its publication of the Banner and AI Summary, are likely to deceive reasonable consumers and businesses into believing that Veritas is engaged in fraudulent activity and that its customer base is overwhelmingly dissatisfied, when in fact objective data and suppressed positive reviews demonstrate otherwise.

89.     Veritas lost money and property, including dealership contracts and the cost of countermeasures, in an amount to be proven at trial.

**FOURTH CLAIM FOR RELIEF**

**(Injunctive Relief)**

90.     Veritas incorporates by reference each preceding paragraph of this Complaint as if set forth in full.

91.     Sitejabber's ongoing publication of the Banner and AI Summary, and suppression of positive reviews, cause irreparable harm not fully compensable by money damages.

92.     Veritas seeks permanent injunctive relief requiring Sitejabber to: (i) remove the Banner and AI Summary; (ii) publish suppressed positive reviews under neutral criteria; (iii) cease misrepresenting review integrity; and (iv) comply with the FTC Order.

**PRAYER FOR RELIEF**

**WHEREFORE**, Veritas prays for relief and respectfully requests that the Court enter judgment as follows:

1.     Awarding compensatory and special damages in an amount to be proven at trial;

2.     Awarding statutory and treble damages under the Lanham Act;

3.     Awarding restitution under the UCL and FAL;

4.     Issuing permanent injunctive relief as requested;

5.     Awarding attorneys' fees and costs as permitted by law; and

6.     Granting such further and other relief as the Court deems just and proper.

- 20 -                                    VERITAS' COMPLAINT

4910-4249-8663

Dated: November 5, 2025                          SNELL & WILMER L.L.P.


                                            By: /s/ *Cameron J. Schlagel*
                                                Brett W. Johnson
                                                Colin R. Higgins
                                                Cameron J. Schlagel

                                                Attorneys for Plaintiff
                                                Veritas Global Protection Services, Inc.

VERITAS' COMPLAINT

4910-4249-8663

## DEMAND FOR JURY TRIAL

In accordance with to Rule 38 of the Federal Rules of Civil Procedure, Veritas demands a trial by jury on all such triable issues.

Dated: November 5, 2025                              SNELL & WILMER L.L.P.


By: /s/ *Cameron J. Schlagel*
    Brett W. Johnson
    Colin R. Higgins
    Cameron J. Schlagel

    Attorneys for Plaintiff
    Veritas Global Protection Services, Inc.

- 22 -                                              VERITAS' COMPLAINT

4910-4249-8663